ARKANSAS MUTUAL FIRE INSURANCE COMPANY v. WOOLVERTON.

Opinion delivered April 29, 1907.

1. INSURANCE—IRON-SAFE CLAUSE—CONSTRUCTION.—Under the iron-safe clause in a fire insurance policy whereby the assured agreed to keep his books and inventory, as well as the last inventory taken preceding the issuance of the policy, in a fire-proof safe, and to produce the same after a fire, the insured is not required to preserve the inventory until the trial, but only to preserve it until after the fire so that it may be exhibited to and examined by the insurance company's representative. (Page 480.)

2. EVIDENCE—REFRESHING MEMORY.—Where assured's inventory was lost after having been exhibited to the insurance company's adjuster, a summary of its contents could be used by assured at the trial to refresh his memory in testifying as to the contents of such inventory. (Page 480.)

3. IRON-SAFE CLAUSE—SUBSTANTIAL COMPLIANCE.—Where the assured proved that the total amount of his cash sales were entered daily on his books, but not the separate items thereof, and that this was the customary method of bookkeeping in the locality, this was sufficient, under Kirby's Digest, § 4375a, to show substantial compliance with the iron-safe clause requiring that the assured shall

keep a set of books showing a complete record of business, includ-
ing all purchases and sales.  (Page 481.)

4.  INSURANCE—BREACH OF WARRANTY.—Where assured, in an applica-
tion for insurance, was asked whether any threat of incendiarism
had been made, and whether he had reason to fear incendiarism,
and answered in the negative, proof that several years previously
he had suspected incendiarism in the destruction of some of his prop-
erty, but that the suspected parties were dead, did not establish a
breach of warranty in his representations.  (Page 481.)

5.  SAME—STATUTORY PENALTY—PROSPECTIVE OPERATION.—The act of
March 29, 1905, imposing a penalty and attorney's fee upon an
insurance company failing to pay its policy within the time speci-
fied in its policy, does not apply to policies in existence when it
was enacted.  (Page 482.)

Appeal from Conway Circuit Court; *Sam W. Simpson,*
Special Judge; affirmed with modification.

*C. S. Collins,* for appellant.

1.  The insured is required to take such an inventory as
will show the character of the goods, and a mere summary
is not sufficient to comply with the clause.  67 S. W. 153.  In
Texas it has been held that the rule as to substantial compli-
ance does not apply where there has been no compliance, or
where there has been a clear case of negligence on the part of
the insured.  25 Tex. Civ. App. 518; 77 S. W. 424.  See also
19 Tex. Civ. App. 338.  The iron-safe clause is a part of the
policy; and while it refers only to the inventory, the policy itself
stipulates that "he shall produce for examination all books of
account, bills, *invoices,* etc., or certified copies thereof."  It was
no substantial compliance with this feature of the policy to
produce a mere list of invoices of purchases since the date
of the inventory.  62 Ark. 49.  See also 54 Ark. 23; 53 Ark.
357.  The inventory taken from June 1st to 15th, 1905, ought
not to have been admitted.  A subsequent inventory is not
competent evidence.  65 Ark. 248.

2.  It was error to allow witnesses to testify to the cus-
tom of merchants keeping such stores in keeping their books.
It is only where there is some ambiguity that evidence of cus-
tom is admissible for the purpose of throwing light upon and re-
moving the ambiguity.  54 Ark. 376; 77 S. W. 424; 71 Miss.
919; 81 S. W. 573; 106 Mo. App. 684; 83 N. W. 81; 20 Ind.

App. 333; 26 Ind. App. 472; 169 Ill. 626.   See also 180 U. S. 132; 22 So. 104; 21 S. E. 1006; 45 S. W. 61.

3.   It was error to exclude testimony tending to show incendiarism, or fear of incendiarism.

*E. B. Kinsworthy, W. P. Strait* and *Chas. C. Reid,* for appellee.

1.   Appellee has fully complied with the iron-safe clause. There is neither rule nor reason that insured should forfeit his insurance because, after having produced his inventory to the adjuster who examined it, a small part of the inventory, without fault on the part of the insured, has been lost and can not be produced at the trial.   It was purely a question for the jury, and the proof was ample to support the verdict.   58 Ark. 565; 53 Ark. 353.

2.   The contract is presumed to have been made with reference to the custom of merchants, and is construed most strongly against the insured.   54 Ark. 376.

3.   In any event there was a substantial compliance with the requirements of the policy under the statute.   Kirby's Digest, § 4375a; 95 S. W. 152; *Id.* 480; 79 Ark. 160.

4.   The act providing for twelve per cent. penalty and attorney's fee but follows the wholesome legislation of other States which has been sustained both in State and Federal courts.   24 L. R. A. 504 and notes in 3 L. R. A. Cases as Authorities, 723; 185 U. S. 325; 76 N. W. 1068.

*J. W. & M. House* and *Ashley Cockrill, amici curiae.*

1.   It has been held that similar acts do not apply to losses occurring after the passage of the act.   50 Tex. 500; 169 Mo. 12.   The act does not apply to losses occurring after the passage of the act under policies in force prior to its passage. Retroactive statutes are not favored.   They act prospectively unless the intent is clear to the contrary.   68 Ark. 333; Lewis, Sutherland, Stat. Const. § § 641-2; 10 Ark. 148; *id.* 516; 5 Ark. 510; 20 Ark. 293; 14 Ark. 447; 24 Ark. 372; 56 Ark. 485; 26 Ark. 127; 25 Ark. 625; 31 Ark. 484.   "A statute should not receive such construction as to make it impair existing rights, create new obligations, impose new duties in respect to past transactions, unless such plainly appears to

be the intention of the Legislature. In the absence of such plain design, it should be construed as prospective only, although its words are broad enough, in their literal extent, to comprehend existing cases." Lewis, Sutherland on Stat. Const. § § 643, 646. If the act is given a retrospective effect, it impairs the obligations of a contract. 169 Mo. 12. A similar statute was upheld on the theory that it was imposed as a condition upon which corporations could do business in the State. 185 U. S. 308. But it is clear that such a condition can not be made to apply so as to affect business already done in the State prior to its imposition.

2.   In its prospective effect, the act is contrary to the United States Constitution, 14th Amendment. 165 U. S. 150. And violates the following provisions of the State Constitution, § § 3, 7, 8, 13, and 18, art. 11. See also 49 Ark. 492; 55 Ala. 193; 60 Miss. 641; 70 Mich. 382; 77 Mich. 104; 53 O. St. 12; 48 L. R. A. 340; 64 L. R. A. 325; 68 Pac. 138.

*E. B. Kinsworthy* and *Reid & Strait,* for appellee in reply to *amici curae.*

1.   The act providing for assessment of penalty and attorney's fee reads "in all cases where loss occurs," etc., plainly including all losses that occur after its passage, no matter when the policy was written. 76 N. W. 1068; 40 Neb. 528.

2.   The act is valid. 4 Cooley's Briefs on Law of Ins. 3884; 189 U. S. 301; 187 U. S. 335; 185 U. S. 308; 64 L. R. A. 451; 39 So. 637; 35 So. 171; 80 Mo. App. 75; 74 Ga. 642.

McCULLOCH, J.   This is an action on a fire insurance policy dated October 31, 1904, in the sum of $1,500, issued to the plaintiff on his stock of merchandise, store furniture and fixtures alleged to be of the value of $5,710.50, and which was destroyed by fire.

The defendant pleaded as a defense an alleged violation by plaintiff of the iron-safe clause of the policy whereby he agreed to keep his books and inventory, as well as the last inventory taken preceding the issuance of the policy, in a fire-proof safe, and produce the same after the fire, and deliver them to the company for examination. The alleged breach of the conditions of the policy consisted of a failure to preserve the last preceding inventory taken on February 1, 1904. An inventory

was duly taken in June, 1905, which was but a short time before the fire, and it was produced at the trial of the cause, but the inventory taken February 1, 1904, was not produced, and the plaintiff was permitted to testify, over defendant's objection, concerning the amount of stock shown by said inventory, and to read a summary of the inventory which had been entered on his ledger. He testified that the itemized inventory was taken down by himself and clerks on slips or sheets of paper in a tablet, and a general summary thereof was copied on the ledger; that these slips or sheets of paper were kept in the safe until after the fire, when they were taken out and delivered to the adjuster of the company except two or three sheets which had been misplaced when the adjuster got there; that the adjuster examined the inventory, and made no objection to the loss of the two or three sheets, but on the contrary said that, if the company was liable at all, it was liable for the full amount of the policy; that afterwards the inventory was lost.

It is contended that the whole of the inventory must have been preserved in order to comply with the policy, that it must be produced at the trial, and that oral testimony of its contents or of the summary thereof on the ledger was not admissible. The evidence establishes, we think, compliance with the terms of the policy with respect to the taking and preservation of the inventory. It was properly itemized, and was preserved until after the fire and exhibited to the adjuster except two or three sheets which, it appears, did not materially affect the amount of the inventory. Our statute provides that substantial compliance upon the part of the assured with the terms, conditions and warranties of fire insurance policies on personal property shall be deemed to be sufficient. Act March 29, 1899; Kirby's Digest, § 4375a. The taking of the inventory and preservation of all of it except an immaterial part was certainly a substantial compliance with the requirements of the policy in that respect.

The summary entered upon the ledger was not of itself a sufficient compliance with the terms of the policy, and counsel for appellee do not claim it to be such; but, in the absence of the inventory itself, and where it has been shown to have been lost after the fire and exhibition to the company's adjuster, the summary could be used by a witness to refresh his memory in tes-

tifying concerning the amount of stock shown by the inventory. *Phoenix Ins. Co.* v. *Public Parks Amusement Co.,* 63 Ark. 187; *Greenwich Ins. Co.* v. *State,* 74 Ark. 72. The policy does not require the preservation of the inventory until the trial. It only requires preservation until after the fire, so that the inventory can be exhibited to and examined by the company's representative.

There is no evidence of fraud, negligence or wilfulness on the part of the plaintiff in misplacing or suppressing the inventory. Proof of such conduct on his part might call into operation other principles which would prevent the assured from showing compliance with the terms of the policy by exhibition of the original inventory at the trial, but we have no such question before us. The proof is ample—in fact. undisputed—that the plaintiff acted in perfect good faith and fully complied with the policy. There is not the slightest evidence of any misconduct on his part in suppressing the inventory or any other evidence of the amount of his loss.

The policy provides that "the assured shall keep a set of books which shall clearly and plainly present a complete record of business transacted in reference to the property herein mentioned, including all purchases, sales and shipments, both for cash and credit, from the date of the inventory provided for in the preceding section, and during the life of the policy, or this policy shall be null and void." Plaintiff testified that his cash sales were entered daily in bulk at the end of each day's business, and that the entry did not show each item of merchandise sold for cash. His testimony and that of other witnesses established the fact that this was the customary method of bookkeeping in vogue among the merchants in that locality. This was sufficient to show substantial compliance with the clause of the policy quoted above. *Sun Ins. Co.* v. *Jones,* 54 Ark. 376; *Western Assurance Co.* v. *Althcimer,* 58 Ark. 565; *People's Fire Ins. Co.* v. *Gorham,* 79 Ark. 160.

The proof does not establish any forfeiture of the policy with reference to the statement of the plaintiff in his application for insurance concerning threat or fear of incendiarism. The question was asked in the application, in the following form: "Has any threat of incendiarism been made, or have you any rea-

son to fear incendiarism?" To which the plaintiff answered in the negative. He admitted, while on the witness stand, that he had, several years previous to this time, suspected incendiarism in the destruction of other of his property, but said that the suspected parties were dead when this application for insurance was made. This did not establish a breach of the conditions of the policy. According to the testimony, all fear of incendiarism had passed away with the death of certain suspected parties.

We find nothing in the record upon which a defense against liability of the defendant for the amount of the policy can be sustained. The verdict and judgment were therefore correct to that extent.

The jury, under instructions of the court, assessed against the defendant, in addition to the amount. of the policy, twelve per cent. of the amount of the policy as damage and the sum of two hundred and fifty dollars as attorney's fees. This was done pursuant to section 1 of the act of March 29, 1905, which reads as follows:

"Section 1. In all cases where loss occurs, and the fire, life, health, or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of such loss, 12 per cent. damages upon the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of said loss; said attorney's fees to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed up as a part of the costs therein and collected as other costs are or may be by law collected."

It will be noted that the statute just quoted was enacted after the issuance of the policy involved in this case, and the question is therefore presented whether the statute operated retrospectively so as to warrant the assessment of damages and attorneys' fees on a policy written before its passage. We are clearly of the opinion that the statute can be given no such effect. The statute, if it be valid, materially affects the contract of insurance, and can not be construed to affect or impair a contract already in existence when the statute was enacted.

The Supreme Court of the United States has sustained the validity of a similar statute in Texas on the ground that it imposes a condition upon which insurance corporations could do business in the, State. *Fidelity Mut. Life Ins. Assoc.* v. *Mettler,* 185 U. S. 325.

If the validity of our statute be sustainable upon that ground, it can not apply to contracts of insurance in existence when it was enacted, for it was intended to impose only a condition upon which future business could be done. Policies already written were not subject to those conditions.

. The court erred in allowing the recovery of damages and attorneys' fees. These amounts will be stricken from the judgment, and, after being modified to that extent, the judgment will be affirmed. It is so ordered.