(101 So. 831)

**LONDON ASSUR. CORPORATION v. POOLE. (7 Div. 480.)**

(Supreme Court of Alabama. Oct. 30, 1924.)

**1. Insurance ⬨335(3)—Only substantial compliance with bookkeeping requirements of "iron safe clause" required.**

Substantial compliance with bookkeeping requirements of "iron safe clause" is all that is required; it being unnecessary that insured keep any specific system or forms of books.

**2. Insurance ⬨155—Matters that may be considered by court in construing insurance contract stated.**

While testimony cannot be received to supply omissions in books required to be kept by insured, yet court may consider, in construing insurance contract, surrounding circumstances, subject-matter, location and character of business, method of keeping books, and evidence of expert bookkeepers to explain entries in books as to what books themselves show.

⬨For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Insurance** ⬉335(3)—**Promissory warranties to be liberally construed in favor of insured, and strictly against insurer.**

Requirements of policy as to keeping books are promissory warranties, in nature of conditions subsequent and to be liberally construed in favor of insured. and strictly against insurer.

**4. Insurance** ⬉335(3)—**Insured's method of bookkeeping held to sustantially comply with bookkeeping requirements of "iron safe clause."**

Insured's method of bookkeeping, which included permanent records sufficiently disclosing a general description of goods purchased and prices thereof, and showed amounts of sales and cash received, *held* to substantially comply with bookkeeping requirements of the "iron safe clause," although not showing a description of articles sold.

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Action on policy of fire insurance by G. V. Poole against the London Assurance Corporation. From a judgment granting plaintiff's motion for a new trial, defendant appeals. Affirmed.

The policy sued on contained this clause:

"This insurance is effected subject to the following conditions, which are hereby made warranties by the assured, and are accepted as parts of this contract: * * *

"*Waranty to Keep Books and Inventories, and to Produce Them in Case of Loss.*—The following covenant and warranty is hereby made a part of this policy:

"(1) The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within 12 months prior to the date of this policy, one shall be taken in detail within 30 days of, issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"(2) The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"(3) The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellant.

The system of records kept by the plaintiff is not a set of books, within the meaning of the policy provisions. The question of the sufficiency of the books was for the court, and not for the jury. Jones v. Ætna Ins. Co., 201 Ill. App. 142; Fidelity Phœnix Ins. Co. v. Williams, 200 Ala. 679, 77 So. 156; Ins. Co. of North America v. Williams, 200 Ala. 681, 77 So. 159; Fire Ass'n of Philadelphia v. Williams, 200 Ala. 688, 77 So. 166; Home Ins. Co. v. Williams, 237 Fed. 171, 150 C. C. A. 317; Chamberlain v. Shannon Fire Ins. Co., 177 Ala. 516; Ga. Ins. Co. v. Allen, 119 Ala. 444, 24 So. 399; Monger v. Delaware Ins. Co., 97 Tex. 362, 79 S. W. 7; Day v. Home Ins. Co., 177 Ala. 609, 58 So. 549, 40 L. R. A. (N. S.) 652; Everett-Ridley v. Traders' Ins. Co., 121 Ga. 228, 48 S. E. 918, 104 Am. St. Rep. 99.; Hughes Bros. v. Ætna Ins. Co., 148 Tenn. 293, 255 S. W. 363; Pelican Ins. Co. v. Wilkerson, 53 Ark. 353, 13 S. W. 1103; Joyce on Insurance, 2063.

Knox, Acker, Sterne & Liles, of Anniston, for appellee.

There was substantial compliance by plaintiff, which was sufficient. 14 R. C. L. 1141; 3 Joyce on Ins. (1917) 3490; 9 Ann. Cas. 467 note; 28 C. J. 254; Malin v. Martinstown Ins. Co., 105 Mo. App. 625, 80 S. W. 56; Ætna Ins. Co. v. Johnson, 127 Ga. 491, 56 S. E. 643, 9 L. R. A. (N. S.) 667, 9 Ann. Cas. 461; Standard F. Ins. Co. v. Willock (Tex. Civ. App.) 29 S. W. 218; Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060; German Ins. Co. v. Pearlstone, 18 Tex. Civ. App. 706, 45 S. W. 832; McNutt v. Virginia F. & M. Ins. Co. (Tenn. Ch. App.) 45 S. W. 61; J. B. Clark & Sons v. Franklin Ins. Co., 130 La. 584, 58 So. 345; Penix v. Am. Cent. Ins. Co., 106 Miss. 145, 63 So. 346.

GARDNER, J. G. V. Poole was a country merchant, doing business in the village of Ohatchie, Calhoun county. Ala., whose stock of goods consisted principally of groceries, shoes, notions, produce, and a small amount of hardware. His store, with its entire contents, was destroyed by fire, and he brought this suit against the London Assurance Corporation, with whom he was insured, to recover on the policy which covered the stock of goods. Upon the conclusion of the evidence, the court gave the affirmative charge in favor of the defendant; but upon motion for new trial, becoming convinced this was error, the trial court granted the motion and set aside the judgment. From the judgment granting the motion for new trial, the defendant has prosecuted this appeal.

The integrity and good faith of the insured

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was not questioned. The payment of the policy is resisted solely upon the alleged ground of a noncompliance by Poole with what is known as the iron safe clause contained therein. This clause appears in the report of the case, but is similar in all respects to the iron safe clauses found set out in the cases hereinafter noted. We have above mentioned the general character of Poole's business, but there is an intimation in brief of counsel for appellant that he also handled cross-ties in connection therewith. The evidence very clearly shows, however, that the two or three shipments of cross-ties which he sold were handled as a matter of accommodation for one of his customers, and in no manner formed a part of his business, and may therefore be here laid out of view.

Poole purchased from the Champion Register Company what is referred to in the evidence as a combination safe and register, which was intended to serve the double purposes of a fireproof safe and a cash register, an attachment for the latter being a part thereof. In this safe Poole kept the records of his business; but it proved not to be fireproof, for, with the destruction of his stock of goods by fire, the records were so charred as to be of no service. This identical character of safe was in use by other merchants in the village; nor is it questioned that there was sufficient evidence tending to show that it was such a safe as, in the judgment of prudent men in that locality, was sufficient and considered as fireproof. It very clearly appears, also, that Poole, in the purchase of this safe, acted in entire good faith and in the honest belief that it was fireproof. Upon this appeal no fault is laid at the door of Poole for a failure to produce the records on account of the safe proving not to be fireproof (14 R. C. L. p. 1143), and the only question argued in brief of counsel for appellant relates to the sufficiency of the records kept to meet the requirements of that portion of the iron safe clause requiring that the insured shall keep a set of books, which shall clearly and plainly present a complete record of business transactions, including all purchases, sales, and shipments, both for cash and credit.

With the combination safe and register there was a large book for keeping daily record of business transactions, both for cash and credit. When Poole received goods from wholesale houses, he states that he put down the name of the firm or person from whom the goods were purchased, a description of the merchandise, and the price, though the price of each separate article was not stated. For the country produce which he handled —chickens and eggs—Poole had a small book, on which he entered each item purchased, which is referred to as the composition book, upon which the produce purchased was described, with the prices given. Upon this composition book he also kept a daily record of the amount paid out for chickens, eggs, and produce. There were some shipments of chickens and rabbits which he made, which were entered on the book.

As previously stated, the safe had an attachment similar to a cash register. When an article was sold for cash, it was rung up on this register, and the amount printed on a tape, and at the end of each day's business the cash sales for that day were entered in a permanent record. A similar method was pursued as to credit sales. When a sale was made on credit, the amount was entered on a ticket, giving the name of the purchaser, the article purchased, and the amount, and at the close of the day's business the total amount of credit sales was also entered in permanent form. There was also a record kept of the amount of money received on accounts. When the accounts represented by these credit tickets were paid, the slips itemizing the accounts were either returned to the customer or destroyed; but the permanent record kept by Poole would show the amount of money collected on account. The method of bookkeeping pursued by Poole did not show, as a permanent record, a description of the articles sold for cash or credit, but only the amount. The burden of appellant's contention is that there must be some description, general or otherwise, of goods bought and sold, in order to meet the rule of substantial compliance with this particular provision of the iron safe clause. Very clearly there has been sufficient general description, at least, of the goods bought under Poole's system of bookkeeping, to meet appellant's contention.

It is not questioned that the inventory kept in this safe by Poole was sufficient to meet all requirements, and, as we gather from the argument of counsel, appellant's insistence, reduced to its last analysis in this particular case, is that the permanent records kept must show a description, in some form, of articles sold, whether for cash or on credit. Stipulations in policies of this character, as to keeping and preserving books and inventories and exhibiting them in case of loss, "have for their primary purpose the preservation and exhibition, with reasonable certainty, of the record history of the conduct of the assured's business 'with respect to the quantum and value of the goods destroyed,' unaided by parol, except to explain the method of taking and keeping such books and inventories." Insurance Co. of North America v. Williams, 200 Ala. 681, 683, 77 So. 159, 161.

[1] It is now well settled that a substantial compliance with this provision of the iron safe clause is all that is required. It is not necessary that there be any specific system or form of books kept by the insured. "The exactions of the clause were met if the books kept, the records made, were such as would

fairly show to a man of ordinary intelligence all purchases and sales, both for cash and on credit. * * * One of the purposes of the clause is to prevent the 'perpetration of any fraud by the assured with respect to the quantum and value of the goods destroyed.' " Fidelity-Phœnix Ins. Co. v. Williams, 200 Ala. 678, 679, 77 So. 156, 157.

[2] While testimony cannot be received to supply omissions in the books, yet the court may consider, in construing the contract, "the surrounding circumstances, the subject-matter, the location and character of the business, the method of keeping the books, and the evidence of expert bookkeepers to explain the entries found in the books and as to what the books themselves show." Home Ins. Co. v. Williams, 237 F. 171, 150 C. C. A. 317.

[3] Such provisions are denominated promissory warranties in the nature of conditions subsequent, to which is applicable the doctrine as to forfeitures, and are to be liberally construed in favor of the insured and strictly against the insurer. Day v. Home Ins. Co., 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652. Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399; Ætna Ins. Co. v. Johnson, 127 Ga. 491, 56 S. E. 643, 9 L. R. A. (N. S.) 667, 9 Ann. Cas. 461; 14 R. C. L. pp. 1139, 1140; 3 Joyce on Ins. pp. 3489, 3490,

[4] This provision of the iron safe clause was for the purpose of affording the insurer the best means and most reliable data for ascertaining the insurer's liability. In the instant case the insured had without question a sufficient inventory to meet the requirements of the policy, and we think, also, it very clearly appears his permanent records sufficiently disclose, with a general description, the goods purchased and the prices whereof. The sales for credit were preserved by way of tickets, showing the articles sold, the person to whom sold, and the price; but these tickets were delivered to the customer or destroyed when the amount thereof was paid. The cash received, however, from the payment of these credit tickets, was shown on the books as having been received on account. The books also showed the daily record of the amount of cash received from sales for cash. There appeared, therefore, no confusion as to the sources from which the cash was received.

We are cited by counsel for appellee to a number of authorities holding to the view that the books were sufficient as showing a substantial compliance with the iron safe clause, although the cash book failed to show a description of the articles sold. Arkansas Mutual Fire Ins. Co. v. Woolverton, 82 Ark. 476, 102 S. W. 226; Malin v. Mercantile Town Mutual Ins. Co., 105 Mo. App. 625, 80 S. W. 56; Penix v. American Cent. Ins. Co.,

106 Miss. 145, 63 So. 346; J. B. Clark & Sons v. Franklin Ins. Co., 130 La. 584, 58 So. 345; McNutt v. Virginia Fire & Marine Ins. Co. (Tenn. Ch. App.) 45 S. W. 61; Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060; Ætna Ins. Co. v. Johnson, supra; Western Assurance Co. v. Redding, 68 F. 708, 15 C. C. A. 619.

Counsel for appellant place some reliance upon the decisions of this court in Fidelity-Phœnix Ins. Co. v. Williams, 200 Ala. 678, 77 So. 156, and Insurance Co. of North America v. Williams, 200 Ala. 681, 77 So. 159, herein previously cited; but we do not find that these decisions lend support to appellant's contention—rather the contrary. The permanent record kept by Williams, as disclosed in those cases, did not show any description whatever of goods purchased, and for an appreciable period there was a hiatus in the record history of the business. Indeed, the following language in the Fidelity-Phœnix Ins. Co. Case, used by way of dictum:

"If the records insured kept, viz. inventory taken in January, 1914, invoices, ledger, cash book (from January 1, 1914, to October 16, 1914), and the succeeding cash book had been preserved by being kept in the safe at night, he would have saved from the fire a sufficient record to have met the exactions of this feature of his contract."

—tends very strongly to support the conclusion here reached, to the effect that the set of books kept by Poole met the rule of substantial compliance with this iron safe clause, for the cash book kept by Williams, more particularly described in the companion case of Insurance Co. of North America v. Williams, supra, bears, as to its contents, much similarity to that kept by Poole in the instant case. We have also examined, with much care, further authorities cited by counsel for appellant, among them Pelican Ins. Co. v. Wilkerson, 53 Ark. 353, 13 S. W. 1103; Hughes Bros. v. Ætna Ins. Co., 148 Tenn. 293, 255 S. W. 363; Jones v. Ætna Ins. Co., 201 Ill. App. 142. But we are of the opinion that these authorities are readily distinguishable from the case here under consideration. In any event, however, we are persuaded the decided weight of authority, as well as reason and common sense, sustain the view which we have here entertained, and we are therefore of the opinion that the trial court correctly ruled in granting the motion for new trial.

The judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.